# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | Case No.: 2:12-cr-237-LSC-HGD |
| | } | |
| **CHRISTOPHER LEE TUTTLE,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Every so often, a court submits a case to a jury, and it becomes plainly evident that the jury cannot reach a unanimous verdict. Sometimes (but not always) when that occurs, the parties do not move for a mistrial. There are a number of reasons to explain this circumstance. Some are tactical. However, when such a situation is presented, the court is not a potted plant. Even without a motion, it must declare a mistrial if, taking into consideration all the circumstances, the court concludes there is a manifest necessity to do so. This is just such a case. In fact, it is the classic case where a jury has proven unable to reach a verdict. Thus, even though the United States (for obvious reasons) and the Defendant did not ask for a mistrial based upon a hung jury, the court, taking all the circumstances of this case into consideration, determined that the jury could not reach a verdict in this case. Consequently, a mistrial was declared.

This case is before the court on Defendant Christopher Lee Tuttle's Motion to Dismiss Indictment as Violative of the Double Jeopardy Clause filed April 8, 2013. (Doc. #128). The Government filed a Response on April 11, 2013 (Doc. #129), and Defendant Tuttle filed a Reply to the Government's Response (Doc. #130), on April 15, 2013. The matter has been fully briefed by the parties, and is ripe for decision. For the reasons stated below, the Defendant's motion (Doc. #128) is due to be denied.

I.      **Procedural History**

The trial in this case commenced on Wednesday, March 6, 2013.[1] The evidentiary portion of the trial took fewer than two days.[2] On Monday, March 11, 2013, after closing arguments and jury instructions, the case was submitted to the jury for deliberations. The jury received the case just prior to lunch.

Over the next four court days[3], it became abundantly clear that the jury was unable to reach a verdict in this case. Approximately three hours after receiving the case on Monday, March 11, at 1:25 p.m., the jurors submitted their first question, requesting dates and locations of photographs that were entered in evidence and the minimum or maximum sentence the defendant faced if convicted.[4] (Doc. #117 at 1; Doc. #138 at 69-70.

Later that same day (March 11) the jury reported that they were divided. (Doc. #138 at 71, 74). Contrary to the court's previous instruction, the jurors attempted to report their numerical division in writing, but the Clerk declined to publish the note. (*Id*.). With the parties agreement, the

---

[1] The only activity that day involved was jury selection.

[2] The evidentiary portion of the trial began the next day, on Thursday, March 7, 2013, with opening statements and presentation of evidence by the United States. On Friday, March 8, 2013, the Government presented its final witness and rested. The Defense presented no evidence and also rested. The trial was adjourned for the weekend with closing arguments set to take place on Monday, March 11, 2013.

[3] In his brief, the Defendant spends some time addressing the fact that more than one judge was involved in the trial of this case. (Doc. #128 at 1-2). What is not indicated there is that the undersigned agreed to try this case shortly before it went out for a colleague who had an unexpected last minute conflict. Realizing that he would be out of the office on previously scheduled engagements - not during the evidentiary portion of the trial, but while the jurors were deliberating - the court arranged for other judges in Birmingham to "baby sit" the jury on those occasions. Judge Kallon assisted with Jury selection, Judge Bowdre answered a question from the jury, and Chief Judge Blackburn gave a modified *Allen* charge as the undersigned's request. None of this had anything to do with the jury's inability to reach a unanimous verdict.

[4] The court had already instructed the jury that they were not to consider the issue of punishment as part of their deliberations. (Doc. #138 at 70).

court instructed the jury to continue deliberating and gave it the option of continuing that afternoon or breaking for the evening. (*Id*. at 72-74).

The jury's deliberations continued on Tuesday, March 12, 2013, when the jury sent out a number of questions and requests. First, at 1:56 p.m., the jury asked for a transcript from the court reporter.[5] (Doc. #119). At 2:00 p.m. the jury submitted another question related to certain evidence admitted during the trial. (Doc. #120). At 2:30 p.m. the jury requested that they be able to listen to telephone calls admitted into evidence. (Doc. # 121).

Deliberations continued on Wednesday, March 13, 2013, and at 2:25 p.m. the jury informed the court that they had agreed to a verdict on Count One, but they had not come to an agreement on Counts 11 through 17. (Doc. #122). The jury requested further instructions. (*Id*.). After consultation with counsel, and pursuant to Federal Rule of Criminal Procedure 31(b)(2), the court informed the jury that it could return a partial verdict as to those counts on which it had unanimously agreed. (Doc. #139 at 7-11).

Approximately an hour and a half later, the jury submitted another question to the court, asking if they were allowed to give a partial verdict as to Count One without returning a verdict as to the weight of drugs. (Doc. #123). After consulting with counsel and with the parties' consent, the court informed the jurors that the only way for them to return an unanimous verdict as to Count One would be for them to determine both the defendant's guilt or innocence as to that count and attribute an amount of drugs to him for that count if they found him guilty. (Doc. #139 at 20-23).

---

[5] The court had already instructed the jury that it could not make available a transcript of any part of the proceedings.

Deliberations continued throughout the day on Thursday, March 14, 2013, and at 3:33 p.m. the jury informed the court that they could not unanimously agree on the weight of marijuana in relation to Count One. (Doc. #125). In response, and after consultation with the parties' counsel, the court gave the jury a modified *Allen* charge and instructed the jury to resume deliberations and reach a verdict if the jurors were able to do so. (Doc. #136 at 19-24). The jury continued to deliberate, and its deliberations continued into the morning of Friday, March 15, 2013. Finally, at 11:27 a.m., after several hours of hearing nothing from the jury on Thursday afternoon and Friday morning, the court invited argument on whether it should declare a mistrial. (Doc. #137 at 1-17). After hearing from counsel, the court declared a mistrial based on the jury being unable to reach a verdict. (*Id*. at 5-17).

**II.   Discussion**

The Defendant now contends that the court erroneously declared a mistrial when there was no indication that the jury was unable to reach a verdict, and that under the circumstances, that court action bars any re-trial of the Defendant on the same charges. The court disagrees. The Defendant's position is simply not supported by the law and certainly is not supported by the facts.

The Double Jeopardy clause of the Fifth Amendment provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb. U.S. Const. amend. V. "Jeopardy attaches when the jury is empaneled and sworn," and "[f]rom that point forward, the defendant has a constitutional right, subject to limited exceptions, to have his case decided by that particular jury." *See United States v. Chica*, 14 F.3d 1527, 1531 (11th Cir. 1994) (alterations, quotation marks, and citations omitted). One of the limited exceptions exists when the trial court declares a mistrial, even without the consent of the defendant, upon its finding that "mistrial is a

4

manifest necessity." *Abdi v. Georgia*, 744 F.2d 1500, 1503 (11th Cir.1984), *cert. denied*, 471 U.S. 1006, 105 S.Ct. 1871 (1985). *See also United States v. Perez*, 22 U.S. (9 Wheat.) 579, 579-80 (1824) (Supreme Court holding that when a trial court discharges a jury because the jury cannot reach a verdict, the Double Jeopardy Clause does not bar a new trial for the defendant before a new jury); *United States v. Bradley*, 905 F.2d 1482, 1486 (11th Cir.1990). The determination of whether there was a manifest necessity for a mistrial has been described as a non-formulaic "fact intensive" inquiry considering all circumstances with varying levels of deference afforded to the trial court's decision. *Chica*, 14 F.3d at 1531; *United States v. Berroa*, 374 F.3d 1053, 1056 (11th Cir. 2004).[6] However, this same level of scrutiny does not apply when the mistrial is declared because the jury is unable to reach a verdict. The declaration of a mistrial based on the trial court's belief that a jury is unable to reach a verdict is considered the "classic basis for a proper mistrial." *Arizona v. Washington*, 434 U.S. 497, 509 (1978). *See also Berroa*, 374 F.3d 1053,1057 (11th Cir. 2004). In other words, a jury's inability to reach a verdict is a manifest necessity upon which a mistrial may properly be declared. *Lambrix v. Singletary*, 72 F.3d 1500, 1507 (11th Cir. 1996). A retrial of a defendant on the same charges after a mistrial declared because of a hung jury is not barred by the Double Jeopardy Clause, but is, instead, a continuation of the original jeopardy. *Richardson v. United States*, 468 U.S. 317, 323 (1984); *United States v. Shenberg*, 89 F.3d 1461, 1478 (11th Cir. 1996).

---

[6] To be sure, the term defining the doctrine is not to be defined literally. *See United States v. Gordy*, 526 F.2d 631, 635 (5th Cir.1976) . The Supreme Court has taught us that while "manifest necessity" describes the magnitude of the government's burden, it is "not ... a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge," and "the key word 'necessity' cannot be interpreted literally." *Arizona v. Washington*, 434 U.S. 497, 506 (1978). *See also Chica*, 14 F.3d at 1531 ("Whether manifest necessity exists is a fact-intensive inquiry, and is not susceptible to a mechanical formulation.") (quotation marks and citations omitted). "In other words, this is not a dictionary-defined doctrine, but a decision-defined one with the result depending on the circumstances of each individual case." *U.S. v. Davis,* 708 F.3d 1216, 1221 (11th Cir. 2013), *citing Chica*, 14 F.3d at 1531.

The court readily acknowledges that it did not have the consent of the Defendant to declare a mistrial. However, declaration of a mistrial here was a manifest necessity. *Chica*, 14 F.3d at 1531; *Abidi*, 744 F.2d at 1503. *See also Berroa*, 374 F.3d at 1056. Although presentation of the evidence in this case lasted slightly fewer than two days (all day on Thursday, March 7, and part of the day on Friday, March 8), the jurors deliberated into their fourth day without being able to reach a verdict. The jury communicated with the court on several occasions, and as the days passed, it became clearer and clearer that it was unable to reach a verdict. Indeed, during their second full day of deliberations, Wednesday, March 13, 2013, the jury informed the court that there was agreement as to Count One but not as to the other counts. (Doc. #122). However, it soon became evident that the jury had not reached a verdict, even as to Count One. (Doc. #123). Consistent with Rule 31(b)(2), the jury was informed that it could return a partial verdict as to any counts upon which the jurors had unanimously agreed. (Doc. #139 at 7-11). Thereafter, the jurors informed the court that they could not agree on a drug quantity as to Count One (and asked if they could return a verdict without any finding about drug weight). (Doc. #137 at 15).

After being instructed that they could not return a verdict as to Count One without deciding the question of drug weight, the jury deliberated for most of Thursday, March 14. After doing so, the jurors again informed the court that they could not reach a verdict as to the drug amount for Count One.[7] (Doc. #136 at 9-10; Doc. #125).

Given that the jury's deliberations had already run nearly twice as long as the time devoted to presentation of evidence, and all signs increasingly pointed to the conclusion that the jurors were

---

[7] As already noted, the jury had previously informed the court that it could not reach a verdict as to counts 11 through 17, and were now deadlocked as to all counts of the Superseding Indictment.

having great difficulty reaching a unanimous verdict, the court delivered a modified *Allen* charge and the jury resumed deliberations. (Doc. #136 at 19-24). However, at the end of the day, the jury recessed without reaching any verdict. The jury returned the next day, on Friday, March 15. In total, the jury deliberated for 3-4 hours *after* being given the modified *Allen* charge without being able to reach a verdict. Accordingly, the court heard from both sides and considered various possible alternatives, determined that further deliberations were pointless, and concluded that a mistrial was necessary. (Doc. #137 at 6).

The decision to declare a mistrial in this case was based solely on the fact that the jury could not reach a verdict. The jury indicated as much in many of its own questions and communications with the court. Indeed, during its day of deliberations,[8] the jury indicated that it was unable to reach a verdict. (Doc. #122). After further instructions and another day of deliberations the jury indicated that it was no closer to reaching a verdict. (Doc. #125). The giving of a modified *Allen* charge did not produce a verdict. (Doc. #137 at 1-17). The Defendant's conclusory assertion that "there was no indication that the jury was unable to reach a verdict" (Doc. #138 at 6) is whimsical (at best) in light of the facts. The jury specifically indicated that it was unable to reach a verdict on multiple occasions. After further instructions, including a modified *Allen* charge, the jury still could not reach a unanimous verdict. To be sure, the court declared a mistrial only after the jury repeatedly signaled that it could not reach a verdict and only after it deliberated unsuccessfully for a number of hours after being given the modified *Allen* charge. The court provided several instructions designed to assist the jury in reaching a verdict. However, after four full days of deliberations – again following

---

[8] To be clear, at that point on that third day of deliberations (Wednesday, March 13), the jury had received the case over 48 hours before. As the court has previously noted, it took less than a 48 hour time span (Thursday, March 7 through Friday, March 8) for the parties to present all the evidence in this case.

a short evidentiary trial of less than two full days – and after giving several indications it could not unanimously agree on a verdict, the court concluded correctly that the jury's inability to reach a verdict manifestly necessitated the declaration of a mistrial. The mistrial was properly declared by the court and the Double Jeopardy Clause of the Fifth Amendment does not bar the defendant's retrial on the charges contained in the Superseding Indictment.

### III.   Conclusion

After careful consideration, the court concludes that the Defendant's Motion to Dismiss (Doc. #128) is due to be denied. This case will be re-set for trial by separate order.

In addition, a separate order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this ___15th___ day of May, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE